No. 12021

IN THE SUPREME COURT OF THE STATE OF MONTANA

1971

---

ROBERT LARSON, a/k/a BOB LARSON,

Plaintiff and Respondent,

-vs-

GUY P. BURNETT and MARTHA E.
BURNETT, his wife,

Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellants:

Garlington, Lohn and Robinson, Missoula, Montana.
Robert E. Sheridan, Jr. argued, Missoula, Montana.
Sherman V. Lohn appeared, Missoula, Montana.

For Respondent:

Tipp, Hoven and Brault, Missoula, Montana.
Raymond P. Tipp argued, Missoula, Montana.

---

Submitted: December 3, 1971

Decided: JAN 12 1972

Filed: JAN 12 1972

_Thomas J. Kearney_
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by defendants, Guy P. Burnett and Martha E. Burnett, his wife, from a final judgment of the district court of Missoula County following that court's denial of defendants' exceptions and motion to amend the findings of fact and conclusions of law. The case was tried by the court without a jury. Judgment was entered wherein the court found that the plaintiff, Robert Larson, had acquired a nonexclusive easement for road purposes over certain land owned by defendants. Further, the court ordered that plaintiff for a period of one year should be entitled to the continued use of a certain existing roadway across portions of defendants' land and also plaintiff should have a period of one year to complete the construction of the roadway on his easement.

The sequence of events leading up to this action can be summarized in this manner:

In 1966 plaintiff purchased property located in Missoula County, Montana, situated directly north and adjoining two pieces of property owned by defendants; plaintiff's property abuts the Bitterroot River on the south. It was stipulated by counsel for both parties that there was no written grant of any interest or easement in the 1966 conveyance to plaintiff. After purchasing the property, plaintiff in order to gain access to his property made several attempts to procure an easement over adjoining properties owned by others. When defendants originally purchased their two adjoining pieces of property in 1962, road access to plaintiff's property was accomplished by use of a road running in a north-south direction through the westerly tract owned by defendants. This road will be referred to as the "old road".

From the outset defendants had advised plaintiff he did not have access to his property by way of the "old road" through their property. The record is replete with testimony of defendants flatly telling plaintiff he could not avail himself of access to his property by way of theirs. In addition, "No Trespassing" signs were placed every few feet and a lock was placed on the gate where the "old road" entered defendants' westerly tract.

It was at this point that difficulties began. Plaintiff cut the lock and went on defendants' property. The "No Trespassing" signs were either broken or torn down by plaintiff or his son.

At about this time, defendants entered into negotiations with a third party, one Koessler, to sell their westerly tract over which the "old road" runs. Defendants, in order to gain access to their remaining easterly tract, then built a road running in a north-south direction across the lower one-third portion of their remaining easterly tract, so that it would not be necessary to use the road on the westerly tract being sold. In the meantime the dispute between plaintiff and defendants intensified until on May 1, 1968, the parties finally entered into a written agreement, the full text of which follows:

> "I Guy P. Burnett, agree to let Bob Larson go thru my property if high water is on his entrance road and he cannot get thru. This agreement expires July 1, 1968. After that permission must be obtained from new owners to pass thru property.
>
> > "/s/ Bob Larson
> > Bob Larson
> >
> > "/s/ Emanuel Rohrbach
> > Witness
> >
> > "/s/ Guy P. Burnett
> > Guy P. Burnett
> >
> > "/s/ Emanuel Rohrbach
> > Witness"

The district court, in adjudicating this matter, was unable to find sufficient evidence to warrant the establishment of an easement by adverse use. Nevertheless, the district court did grant plaintiff a "non-exclusive" easement upon the "new road" over and across the lower portion of defendants' easterly tract. The judgment further grants plaintiff a period of one year to complete construction of a road which would run along the upper two-thirds of defendants' easterly tract, no road in that location presently being in existence. The record also indicates that at the time plaintiff purchased his property, no road was in existence along the upper two-thirds of defendants' easterly tract.

On appeal defendants raise the following issues for review:

1. Does adverse use for less than the full statutory period confer any interest upon the plaintiff?

2. Did the district court err in admitting oral testimony to modify the written agreement dated May 1, 1968?

3. Did the district court err in finding that the written agreement dated May 1, 1968, granted an easement for roadway purposes to plaintiff?

Plaintiff's position is simply that the evidence submitted at the trial clearly supports the district court's findings and judgment. Plaintiff contends defendants bargained with him to relocate the easement and road. He relied on the bargain, changed his position, and gave valuable consideration. Plaintiff further contends that he is therefore entitled to the relocated easement and road, and to deny him such relocated easement and road, which he bargained for, would permit a gross injustice and wrong at the hands of defendants who to begin with created the condition.

- 4 -

This Court has many times stated its function on appeal in a nonjury case is to determine whether there is substantial evidence to support the findings of fact of the trial court, and we will not reverse such findings of fact unless there is a clear preponderance of evidence against such findings. Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48, and cases therein cited; Smith v. Krutar, 153 Mont. 325, 457 P.2d 459.

A general picture of the applicable legal precedents to this controversy appears desirable. It is well established law in Montana that a party claiming to have acquired any easement or interest by prescription must show open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement claimed for the full statutory period. Scott v. Jardine Gold Min. & Mill. Co., 79 Mont. 485, 257 P. 406; Cope v. Cope, _____Mont._____, _____ P.2d _____, 28 St.Rep. 1120.

An "exclusive" use means that the claimant's right to use the right-of-way is independent of a like right-of-way in another. Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91. Further, any use which is permissive in its inception cannot ripen into a prescriptive right, unless there has been a distinct and positive assertion by the claimant owner of a right hostile to the owner of the servient lands. Drew v. Burggraf, 141 Mont. 405, 378 P.2d 232. Finally, the presence of gates that must be opened by the user is generally considered to be strong evidence of a mere personal license to pass over the right-of-way. Peasley v. Trosper, 103 Mont. 401, 64 P.2d 109.

In Montana, it is equally as clear that any adverse use for less than the full statutory period of five years can in no way confer any rights or interest whatsoever upon the person attempting to establish such adverse use. Section 93-2507, R.C.M. 1947.

This Court in Scott v. Weinheimer, 140 Mont. 554, 560, 374 P.2d 91, stated:

> "To establish the existence of an easement by prescription, the party so claiming must show open, notorious, exclusive, adverse, <u>continuous and uninterrupted use of the easement</u> for the full statutory period. * * * <u>By 'continuous and un-interrupted' use is meant use not interrupted by the act of the owner of the land</u> or by voluntary abandonment by the party claiming the right." (Emphasis supplied)

Applying the foregoing general principles to the relevant facts here, there is no evidence in the record to support the district court's determination that plaintiff did have such interest so as to constitute valid consideration for the alleged transfer thereof to the upper two-thirds of defendants' easterly tract.

The district court was unable to find that plaintiff had in fact obtained an easement by adverse use. Logically it would then follow that plaintiff acquired no right to a transfer of a roadway easement when he had nothing to begin with. To hold otherwise would confer upon a trespasser rights and interests which would place the owner at a serious disadvantage and infringe upon the legitimate rights accruing to land ownership. Indeed, the reasoning behind plaintiff's argument would elevate a trespasser on land to the unfair position of being able to demand compensation in return for a relinquishment of "interest" the trespasser had obtained by "partial adverse use", when the use had been for a period considerably shorter than the five year required period prescribed by statute. We are certain the legislature never intended such result, when enacting our adverse possession statute.

Our examination of the record clearly reveals the permissive nature of plaintiff's right to go across defendants' land. At the outset when plaintiff purchased his property, he was in no

way told by adjoining landowners or by defendants that he had a right-of-way over defendants' land; in fact, it was only after plaintiff had been unsuccessful in trying to establish a right-of-way across the lands of other adjoining owners that he began his attempts to get an easement upon defendants' land.

Finally, we hold the district court erred in admitting oral testimony modifying the written agreement dated May 1, 1968, between the parties.

At the trial plaintiff was allowed to explain to the court that this written agreement was intended to give him access over the easterly tract of defendants' property in return for a termination of plaintiff's access over the westerly tract, formerly owned by defendants.

It is well established law in Montana that, subject to certain exceptions not pertinent here, written contracts cannot be varied, contradicted, nor altered by parol or extrinsic evidence. Pritchett v. Jenkins, 52 Mont. 81, 155 P. 974; Leigland v. McGaffick, 135 Mont. 188, 338 P.2d 1037; Section 13-907, R.C.M. 1947.

Our reading of the written agreement between the parties clearly indicates there was no mistake, imperfection, or ambiguity which would in any way require parol testimony to explain. The intent of the parties is clear within the words of the agreement. Defendants were willing to permit plaintiff to use their easterly tract for two months. After that period of time, plaintiff no longer had access to the defendants' property. At best, plaintiff was granted a temporary permissive easement from May 1, 1968 until July 1, 1968.

In addition, in conjunction with the question of the inadmissibility of parol testimony to vary the terms of the parties written agreement, we hold the district court erred in finding that the terms of the agreement could be interpreted to grant an easement to plaintiff.

The district court in its findings states, in effect, that the written agreement to terminate the use of roads applied only to that piece of property which defendants were selling, i.e. the westerly tract, and not to the road located on the easterly tract, still owned by defendants.

Our review of the evidence indicates otherwise. The words "my property" contained in the agreement can have but one reasonable meaning. At the time of the execution of the agreement, defendants had already sold their westerly tract on contract, and they remained only the owners of the easterly tract. The phrase "my property" plainly and simply means that property remaining in the defendants' hands, specifically their easterly tract. Further, the terms of the agreement unequivocally state the agreement expires on July 1, 1968. For the district court to have found that plaintiff had any rights after July 1, 1968, ignores the express language of the agreement.

Accordingly, we find plaintiff's use to be permissive in nature and, since no easement was established by prescription, he had no right to transfer any easement upon any area of defendants' property.

Judgment is reversed.

_____
Associate Justice

- 8 -

We Concur:

_James T. Harrison_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_
Associate Justices.

Mr. Justice Wesley Castles, deeming himself disqualified, took no part in this Opinion.