HOWARD KOSTBADE and CHRISTINE KOSTBADE, Plaintiffs and Respondents, v. EARL METIER, DAVE RIGLER and BRYAN T. LOVELY, Members of the Board of Park County Commissioners, of Park County, Montana, GEORGE STEBBINS, Park County Road Foreman and JACK D. SHANSTROM, County Attorney, Park County, Montana, Defendants and Appellants.

No. 11249.
Submitted September 15, 1967. Decided October 3, 1967.
432 P.2d 382.

Byron Robb (argued), Livingston, Arnold Berger (argued), Billings, for appellants.

Arnold Huppert, Jr. (argued), Livingston, Joseph B. Gary (argued), Bozeman, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiffs entered upon findings of fact and conclusions of law. This court previously heard the matter on April 11, 1967, and granted rehearing on June 6, 1967.

In June of 1964, the Commissioners of Park County, appellants here, issued a notice to respondents, husband and wife, owners of private property, requesting them to remove certain gates located on a certain road, described hereinafter. This action was commenced by respondents on June 30, 1964, to determine whether the road was public or private, and to enjoin further interference by the County Commissioners. Testimony was heard by District Judge George J. Allen on September 9, 1964. Judge Allen died in December 1964, without making a determination of the cause. Jurisdiction was thereafter assumed by Judge W. W. Lessley, who entered findings on July 15, 1966, and judgment for plaintiffs, finding that the road was private, on July 26, 1966.

Due to the untimely death of Judge Allen who heard the testimony, Judge Lessley was called in. He did not actually observe the witnesses, their demeanor, their candor or lack of candor. Judge Lessley reached his decision solely on the basis of the transcript and exhibits, the same documents that are before this court. This court is in just as good a position as the trial court was to make findings solely from the record. Thus, the rule that this court will not ordinarily disturb the findings of the trial court where there is conflict in the evidence does not necessarily apply in this case. Where the reason of a rule ceases, so should the rule. R.C.M.1947, § 49-102. In this instance we are free to make our own examination of the entire case and to make a determination in accordance with what we find.

The respondents are the owners of certain land located in the southern part of Park County, Montana, having purchased these lands in 1958. The road which is the subject of this

action runs along Mol Heron Creek through this property. It was originally constructed by one Taylor sometime around the turn of the century and terminates at the site of the old Taylor homestead. There is some evidence that a road of sorts goes beyond this point but it has been conceded that beyond the old Taylor homestead any road which may exist is private so we are not now concerned with anything beyond this point.

In 1938, Roy Armstrong, a predecessor in interest of respondents, constructed a gate across the road. Throughout the transcript this gate is called the "top of the hill gate" and it will be called the same here. This gate was sometimes closed, to keep cattle from drifting down the road, but was always left unlocked. In 1964, respondents constructed two gates across the road which they locked. These gates denied access to most of the road and were the impetus of this action to establish the right to maintain them.

■■ It was stipulated between the parties that the road was originally private, and that if it were now public, it became so by prescription. That the public may acquire the right by prescription to pass over private land is undisputed and such is the law in Montana. To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner. Brannon v. Lewis and Clark County, 143 Mont. 200, 387 P.2d 706; Descheemaeker v. Anderson, 131 Mont. 322, 310 P.2d 587, 63 A.L.R.2d 1153; Peasley v. Trosper, 103 Mont. 401, 64 P.2d 109.

■ This road has followed a definite course over the same strip of land for over 50 years. In 1954 one Melvin Standish, a logger, made some alterations. He widened a curve so that logging trucks could pass and repaired a section washed out by the creek. He did this for his own convenience and not with the permission of the landowner at that time. This improvement of the road without altering its course is not fatal

to the establishment of a prescriptive right as the path of the road is unchanged. The road was originally used for buggy and horse-drawn wagons and has through use become suitable for automobiles but the evidence is convincing that it has not changed its course to an appreciable extent.

By "continuous and uninterrupted use" is meant that the use was not interrupted by the act of the owner of the land, and that the right was not abandoned by the one claiming it. Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91. The record leaves no doubt that the use of this road by the public was continuous until the installation of the two locked gates in 1964. The top of the hill gate did not preclude the public from using the road as it was left unlocked. During the greater part of the year this gate was left open and there is also testimony that the public opened it and passed through during the times that it was closed. There is no evidence that the public, through the county officials or any other way, abandoned any rights it may have acquired to use the road.

This court has said that to establish a prescriptive right it must be shown by clear and convincing evidence that the use was adverse and not by permission of the landowner. Peasley v. Trosper, supra; Violet v. Martin, 62 Mont. 335, 205 P. 221. However, the older a road the more difficult it usually is to produce the proof of actual adverse use because the witnesses are usually no longer available.

At the trial of this case the history of the early use of the road was brought out as well as it could be. The witness Mickey McDonald testified he first recalled using this same road around 1904 or 1905 and that for over fifty years hunters used the road freely. Anton Stermitz said he had been familiar with the road for as long as he could remember and that the public had used it freely. He was 66 years old at the time of the trial. Dave Rigler testified he had been familiar with the road for over 40 years, that access was never denied to him, and he had always thought it was a public road.

Sheriff Albert Nickelson said he had hunted up the road in an automobile in 1928 and had free access. All of these men observed other members of the general public using the road during these early days and there is no evidence at all that any of these people used the road with the permission of the landowner. Respondents produced no evidence showing that the public was ever denied use of the road. The picture is not complete but it does show open and notorious use by members of the public commencing over half a century ago with no showing whatever that the use was permissive.

In later years this use has continued. Roy Armstrong, who owned the land from the late 1920's or early 1930's until his death in about 1955, can no longer testify but no less than eight witnesses said that they had free access to the road during the time without ever obtaining his permission. Respondents' immediate predecessor in interest testified that the public used the road freely when he owned the land and that he considered it a public road.

George Stebbins, now Park County Road Foreman, testified that he personally maintained the road as a county employee from 1940 to 1947. He was ordered to perform this work by Roy Armstrong who during that time was both the owner of the land over which the road passes and a County Commissioner. The presumption is that official duty has been regularly performed, R.C.M.1947, § 93-1301-7(15); so, in the absence of a showing to the contrary, this work must be considered as having been done by the county acting through its officers. Documentary evidence and testimony was introduced showing periodic maintenance of the road by the county in succeeding years. Witnesses for respondents testified that they had not seen county equipment on the road but admitted that such maintenance could have taken place.

Since 1953 the period of adverse user required to establish a prescriptive right has been 5 years. R.C.M.1947, §§ 67-1203, and 93-2504. Between 1895 and 1953 the period was 10 years.

The evidence is convincing that the public used this road continuously for at least 50 years prior to the respondents' installation of the two locked gates in 1964. Use of the character involved here raises a presumption that the use was adverse, under claim of right and sufficient to establish a public highway by prescription. State v. Auchard, 22 Mont. 14, 55 P. 361; Smith v. Zimmer, 45 Mont. 282, 125 P. 420; Scott v. Weinheimer, supra.

Opposing this presumption that the road is public is the fact of the "top of the hill gate." The fact that a road has been barred by gates to be opened and closed by the parties passing over the land has always been considered as strong evidence of a mere license to the public to pass over the designated way. Maynard v. Bara, 96 Mont. 302, 30 P.2d 93; Peasley v. Trosper, supra; Descheemaeker v. Anderson, supra. A close examination of the facts of this particular case, however, reveals that this gate was not constructed or maintained in such a way as would show permissive use of the road. The gate is part of a drift fence constructed in 1938 to control cattle. It was never locked, and was only closed during the summer. Its purpose was not to control traffic on the road and it appears that it did not in fact hinder public use of the road. The county did not stop its maintenance work at the gate but continued on through it to the old Taylor homestead. The road was in use by the public for 25 or more years before the construction of the gate and this use continued virtually unchanged for 26 years after it was built. The evidence of this one gate, admittedly built not to stop people but cattle, is not enough standing alone to rebut the presumption established by such long public use.

Respondents have shown that no reduction was made in their taxes because of the road across their land. In Montana this fact is immaterial to the establishment of a way by prescription. Brannon v. Lewis and Clark County, supra.

Appellants claimed in their briefs and on oral argument that

this action was not properly brought because an injunction was prayed for. We find it unnecessary to examine this point, as the issue of public road versus private is, by the facts and by stipulation of counsel, the one main issue of the case; and it was properly joined at trial and on appeal. It is on this issue that we have based our decision.

Having thus reconsidered all of the law and evidence we find that the road in question has become a public road by prescription.

The judgment of the lower court is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON concur.